So this morning we will hear Dieter v. Lindsay Quintilone 181377 as a two-judge panel. Thereafter we'll adjourn briefly and come back to hear the remainder of the calendar. We'll start with Dieter v. Quintilone. Good morning and may it please the Court, I'm Jeff Wicks from Rochester. This case is the same as the same case that came before you in 2015 where you held, as the District Court held the defendant's absolute immunity is foreclosed by your case in Hill v. The City of New York in which you said you denied absolute immunity on facts that are materially the same. Now Judge Teleska, who originally made the motion to dismiss denied, said, well maybe she'll find something in discovery that will bring her back and give her the right to say there's absolute immunity. I submit... The facts are, you say, materially the same. That's what this Court said. They're also significantly different, aren't they? Not in my view, Judge. No, respectfully. Well, I mean, was it the fact in Hill that there was insufficient information to determine whether there was probable cause for the indictment at the time of the subpoenaing of the witness into the videoed grand jury testimony? That is the reed to which they cling in this case, that there was probable cause and that that's the distinction. That's not a distinction that Judge Teleska found. That is nothing new, certainly. We knew all that at the beginning of the case, what they found. Whether Judge Teleska found it or not... Okay, very well. ...is a distinction and why isn't it a very important distinction? Because if it was such... I mean, let me just... I'm sorry, Judge. ...elaborate my question and then you can answer it. Sorry. Where a witness who is the crucial witness to the indictment has informed the government authorities, the prosecuting authorities, whether it's the police or the ADA or whatever, has given the information that the facts constituting the crime are true, and that would be my testimony were I to testify, and then the ADA takes the next step of bringing that witness before the grand jury to place before the grand jury the already given information. The ADA, in that circumstance, is not investigating. The ADA is performing a court-related function, a necessary function, in order to obtain the indictment. The ADA has got to translate that previously given information into grand jury testimony. Otherwise, there can be no indictment. So why isn't that a very important difference between this case and Hill? Because if they thought that it was such an important, compelling, probable cause that made a case, why didn't they arrest him? You know the local court procedure. They could have brought him before a local court with a felony complaint. They didn't do that. Instead, they felt they needed more. They felt they needed probable cause, even by their own admission. So what they did, they employed this procedure under section 190.32 of the criminal procedure law where you videotape a child who's been known to make certain allegations. They felt they needed that to have probable cause. They did need that to have probable cause before the grand jury. Otherwise, it's probable cause to arrest, but not probable cause to indict. In other words, it's not probable cause presented to the grand jury. But that's where they needed the probable cause in order to indict. They went to this procedure in order to get it. The matter of fact is, under the unique facts of this case, they didn't get it. You know the facts here. Three times they went and the child said just the opposite of what she was known to have said previously. The first time on a Friday morning, December 10, 2010, the child says, I don't know what you're talking about. Nobody did anything to me. Under 190.32, I'm not even sure they have the authority to go back. Yet this assistant district attorney and her cameraman decide to go back that afternoon. They try again. I'm not sure it's permitted, but they did it anyway. They still get the same answer. A week goes by. Apparently, sparks are flying in their office and they get marching orders, go back and do it again. What you're saying has nothing to do with whether there was probable cause. If what was being sought was a federal indictment instead of a state indictment, where in the federal grand jury's hearsay evidence is allowed and is generally the basis of federal indictments, they could have indicted as of the beginning. They could have indicted after the child had said several times, no, no, no, no, no. They still had probable cause from what the child had previously said, especially in view of the fact that the child had said something about, my daddy told me don't talk about this. But they didn't. They didn't choose, I mean, they didn't choose to do that. So what? In three times, because is there no significance to the fact that once the first three times out of the four, that she gets bad information from her point of view from the child, is probable cause even there anymore? You're saying that because they didn't arrest, that means they didn't have probable cause to arrest? I'm saying that's what it looked like, and they're saying afterwards as a matter of convenience, that's why we did it. They're saying that now. That's not what they said then. Here, they go three times, they get bad information, there is no probable cause anymore. The fourth time, you know the famous facts here, she doesn't even tell the truth to the child. We learned this during discovery. She says to the child, when there's a knock on the one-way window, your mom's out there. She admits during my deposition of her that she didn't even believe that to be true. She just wanted, what's the quote? To make her feel safe. To make the child feel comfortable. Yeah, to make her feel safe. So she would admit things. All of a sudden, she's singing like a bird. Yes, my brother did that to me. For the first out of four times, and finally they have the probable cause they need for the first time. That's my respectful submission before this court. I hear your argument. Thank you, Judge. Unless there's anything else. You've reserved three minutes for rebuttal. I have. May it please the court. Jeremy Colby of Webster Zani on behalf of former ADA, Lindsay Kintelone. Just briefly before I address some of my learned brother's points, I just wanted to outline five avenues that this court can take to affirm Judge Syragoose's decision below. The first three all involve absolute immunity. The first avenue of absolute immunity, which is the shortest path and easiest path to affirm in this case, is basically, I believe, what Your Honor was addressing with counsel a moment ago. That here, because again, as this court well knows, to apply absolute immunity, we have to ascertain was this ADA acting in an investigative capacity, or was she acting in a prosecutorial or advocative capacity. And here, briefly, the facts were that the child made a report of abuse to a state police investigator. That created probable cause, and let's put that aside because that's really avenue two. The state police concluded their investigation.  The district attorney himself decided to prosecute Tyler Dieter. He gave the marching orders, so he called in two of his ADAs, one of which was Lindsay Kintelone, who was two years out of law school, who the prosecutors used because she was the only female in the office, and they believed that she would have the best rapport to deal with a child. And he told those two prosecutors, go and prosecute this individual. Unlike Hill, there's only one individual that the child has ever reported abuse to. She had previously reported abuse numerous times, not only to the state police, but to her mother, her grandmother, various health care providers. So uninterrupted, Tyler Dieter did it. Unlike Hill, where the child there said, little Jesse did it, big Jesse did it, maybe my stepmother did it. And then the prosecution there said, no, I think your biological mother did it, and this is what I want you to say. And then when the child deviated from that, they stopped it and re-taped it. So Hill is, as Your Honor noted, substantially different from this case. So the first path, again, is the district attorney decided to prosecute, and he gave marching orders. So therefore, this is not an investigation. We are not trying to identify, you know, collect facts to identify. Are you suggesting that if the district attorney decided to indict, even without probable cause, and told the assistant district attorney, go and get an indictment of that person before probable cause existed, that the district attorney's decision to indict would mean absolute immunity? For the ADA, yes, I do believe it would. It may be a different question for the district attorney, perhaps, but again, and under this court's discussion and analysis in Geraldo versus Kessler, the court indicated that, you know, we look at this from the view of a reasonable prosecutor. Would a reasonable prosecutor look at what happened and believe that what was going on was investigation to determine a perpetrator or investigation to pursue a particular prosecution? And here, it was a particular prosecution. The district attorney said, you go and indict that individual. And again, what else would we expect from a ---- So you say if the boss tells you, indict that person, I don't care how you do it, I don't care where you find the evidence, just indict that person, that what subsequently happens in the effort to find something that will justify the indictment or defabricate it, that if it doesn't already exist, that that's all probable cause protected by absolute immunity? No, but with due respect, that's not our case here. We didn't have a ---- No, but it's what you were just arguing. No, I think what ---- and I apologize if I wasn't clear. Here, what I'm arguing is that, again, the district attorney, you know, there was probable cause. There was only one suspect identified by the complainant, and the district attorney said, go prosecute this. So if you're looking ---- You're next. I'm sorry? You're next. Yes, okay. Thank you, Your Honor. So the second path or avenue is also under absolute immunity, and it's the path that Judge Sirigusa took below, and that is that probable cause here did exist because the child complainant made a report of abuse to the state police investigator. Probable cause therefore arose. And therefore, you know, Judge Sirigusa's reasoning is that a particular prosecution existed at that point because we now have probable cause to arrest and prosecute this individual. So, and unless ---- and just briefly addressing some of counsel's points that he addressed with respect to the probable cause issue, again, he says, why didn't they arrest him? Again, and I think he made a comment that, you know, they knew they needed more. I think that speculation is nothing in the record. The only evidence in the record is that both the ADA Kintalone and the state police investigator said, we did this to protect the three-year-old child from having to testify at a felony hearing. And that's why they taped her testimony, and that's why they did this. So, but in any event, so that's that. So that's the second path. The third path, also through absolute immunity, addressed briefly in the papers, is judicial estoppel, that basically in the criminal case, the defense counsel, criminal defense counsel said that what was happening in that room was the equivalent of a grand jury. And so we don't believe that the Tyler Dieter should be able to make that statement and get, you know, he made that statement in the course of seeking to have the indictment dismissed, and he got that.  It was dismissed. It could have been refiled. It wasn't. So he should count his lucky stars. But in any event, his criminal defense attorney did say, you know, make that statement, and we think that he should not be able to walk away from that. I would like to ask you, it seems to me that while the Hill case provides a very substantial precedent that justifies and perhaps requires affirmance in this case, I wonder, it seems to me to go with respect not to these facts, but to other facts, to go further than is perhaps justified. Because if I understand it, the proposition of the Hill case was that if probable cause already exists at the time of the questioning in the grand jury, then the prosecutor's questioning in the grand jury is protected by absolute immunity because the prosecutor is performing a court function. And there are certainly a lot of circumstances where that would be true and justifiable, and perhaps this case is one of them, where what's being done in the grand jury is simply translating into grand jury testimony information that has already been supplied to law enforcement outside the grand jury testimony. The prosecutor has no choice. The prosecutor must make that into grand jury testimony, otherwise can't get an indictment. So it's a court function and it's protected by absolute immunity. But the proposition that the so-called investigative phase ends when there's probable cause or even ends when probable cause is before the grand jury is just contrary to reality because very, very frequently a prosecutor already has probable cause. And so let's say, putting it in terms of closely related to these facts, suppose that the child witness's grand jury testimony had already been recorded and indeed already presented to the grand jury. And then the ADA goes further and says, well, you know, I don't want this case to rest solely on the testimony of this child. I want to get as much corroboration as I can. So issues grand jury subpoenas to all the neighbors, for example, calling them, using subpoena power to get them under oath and get them before the grand jury and asks purely investigative questions. Who did you see going into that house or coming out of that house that day? Did you see the young child? Did you see the older brother? When you saw the child, how did she look when she was leaving the house? Did she look upset? Questions like that that are entirely investigative, looking to bolster the indictment for which probable cause already exists before the grand jury. The way the Hill case is framed, it seems to say that all of that investigative questioning before the grand jury after probable cause already exists is protected by absolute immunity. Does that make sense? I think it does, Your Honor, and I think that the panel of this Court in Geraldo also thought the same thing. I'll just direct, Your Honor, to page 17 of my brief, and I'll briefly quote it. Good prosecutors may, usually should, perform acts reasonably characterized as investigative at all phases of a criminal proceeding. And so there, I think the important point, and again, I'm going to run out of time momentarily, but the important point, I think, with respect to probable cause and absolute immunity is when we get to the point of we have multiple suspects and we're trying to identify a perpetrator, and when do we have a particular prosecution, and I think that's the distinction made in Geraldo. And I'm out of time, but unless Your Honors have further questions that you would like me to address further. Thank you. Thank you. Just one or two points. My esteemed colleague, Mr. Colby, told you that the players in the original scenario did what they did to protect the child having to testify at the preliminary hearing. I think there's speculation afterwards. I don't think that we can conclude that that's why they did it then. What the result was instead is they let this 16-year-old kid, who they thought was a molester, they let him run around for months. They didn't arrest him from the time that they had this proceeding at Provodna Children's Center in December of 2010 until March. So he's four months out of custody anyway. I agree that the decision to tape the child's statement, that fourth time at least, happened, as your adversary said, after the decision to prosecute was made. After the decision to prosecute was made? Yes. Well, they are obviously deciding to prosecute all along, but that doesn't mean that they gain absolute immunity by doing so. They are investigating. Unless you're saying as opposed to investigating? No. They are investigating at that point because after, especially by the fourth time. Appreciating Judge LaValle's question about the very fuzzy line between investigating and prosecuting or deciding to proceed with the prosecution, is it right that the official decision to prosecute by the DA's office was made before the testimony or the statement and the interview was conducted? Are you asking me is that what they did? Yes. I can't see how they could when they have, especially after those first three interviews, a little girl who is saying Tyler didn't do anything. So I don't see how that could possibly be. So in your 56th statement at A485, you agreed that after deciding to prosecute, it was later decided that the child's grand jury testimony would be taped and that it would be presented to the grand jury in lieu of live testimony. Yes. Yes, I'm afraid I'm stuck with that. Nonetheless, I think a situation where you have three times when a little girl is saying there is nothing that he did to me, there is no probable cause, and they don't have probable cause until the fourth time when she is prompted by her mother knocking on the door to say Tyler did it. Unless there's anything else. Thank you very much. We'll reserve the decision. We'll adjourn briefly and come back as a three-judge panel. Court is adjourned.